## WALTON LAND & TIMBER CO. v. RUNYAN.

### In re HOLTON & STRICKLAND et al.

(Circuit Court of Appeals, Fifth Circuit.    December 4, 1920.)

No. 3583.

Bankruptcy ⊂⇒143 (11)—Contract requiring insurance of property construed.

Bankrupts acquired a sawmill under a contract requiring the buyer to maintain insurance, in not less than $4,000, on the mill, loss, if any, payable to the seller as its interest might appear. Bankrupts obtained $7,000 of insurance, sending the policies to seller, which agreed that in case of loss it should receive $4,000, as its share of the insurance. Afterward bankrupts secured $2,000 additional insurance under similar policies. Held, the mill having been burned, that bankrupts, or their trustee, were entitled to all the insurance above $4,000.

Appeal from the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

In the matter of Holton & Strickland and others, bankrupts. The Walton Land and Timber Company appeals from an order of the District Court giving William B. Runyan, trustee in bankruptcy, the right to the fund paid into court.   Affirmed.

See, also, 269 Fed. 128.

William W. Flournoy, of De Funiak Springs, Fla., for appellant.

William H. Watson and S. Pasco, Jr., both of Pensacola, Fla., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge.   In March, 1918, the bankrupts, Holton & Strickland (herein referred to as the buyers), by contract with J. H. Long & Son acquired the rights of the latter and assumed their liabilities under a contract between them and the Walton Land & Timber Company (herein referred to as the seller), whereby the seller sold to J. H. Long & Son a sawmill plant, planing mill, and dry kiln, and certain timber, for $40,000, $5,000 of which was required to be paid before the cutting of the timber sold should be begun; the balance being payable in six installments, falling due at successive intervals of six months, and $3 per M. stumpage being required to be paid at the time of shipment of manufactured products of timber cut.   That contract contained a provision requiring J. H. Long & Son "to procure and maintain insurance upon said sawmill plant, planing mill, and dry kiln, in some first-class insurance company or companies, in a sum not less than $4,000, payable to" the seller "as its interest may appear."   Prior to May 25, 1918, the buyers procured the issuance of seven fire insurance policies, each for $1,000, on the sawmill plant, etc., and each made to Walton Land & Timber Company, owners, and Holton & Strickland, purchasers under contract, as their interest may appear."   Each of those policies had the following indorsement thereon: "Loss, if any, payable to the Walton Land & Timber Company, as their interest may appear."   After the issuance of those policies the

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

following instrument was addressed and executed as indicated by its terms:

"De Funiak Springs, Fla., May 25, 1918.

"Holton & Strickland, Deerland, Fla.—Dear Sirs: We acknowledge receipt of seven fire insurance policies through your Mr. Strickland, the policies being for the sum of $1,000 each, and payable to ourselves and your company jointly, and covering the mill plant at Claroy.

"It is understood and agreed between us that, in case the mill plant should be destroyed by fire, we will receive the sum of $4,000 as our part of the settlement, and your company the balance.

"Yours very truly,       Walton Land & Timber Company,
"By E. W. Thorpe, President."

After the date of that instrument the buyers procured $2,000 additional insurance, evidenced by policies the terms of which were similar to those above mentioned. Prior to the institution of bankruptcy proceedings against the buyers the property covered by the policies mentioned was destroyed by fire. The whole amount called for by the policies was collected, and the seller received $4,000 thereof. The balance, $5,000, was paid into court, and was claimed by the seller and by the trustee in bankruptcy of the buyers. The court decided in favor of the claim asserted by the trustee.

The buyers were under no obligation to procure more than $4,000 insurance on the sawmill plant, etc., for the benefit of the seller. After the seller was informed that more than that amount of insurance had been procured on that property, payable to it and the buyers jointly, it signed the instrument, dated May 25, 1918, acknowledging receipt of the policies already procured by the buyers, and containing the following provision:

"It is understood and agreed to between us that, in case the mill plant should be destroyed by fire, we will receive the sum of $4,000 as our part of the settlement, and your company the balance."

The just-quoted stipulation, considered in the light of the fact that the buyers were under no obligation to procure more than $4,000 insurance on the mill plant in favor of the seller, we think plainly shows that the seller disclaimed any right to receive more than $4,000 of the insurance money payable in case the mill plant should be destroyed by fire, though more than that amount should be payable and paid under policies procured by the buyers, and by their terms made payable to the seller and the buyers jointly. That instrument plainly shows that the seller agreed that the act of the buyers in obtaining more than $4,000 insurance on the mill plant was not, in the event of the destruction of that plant by fire, to have the effect of entitling the seller to more than $4,000 of whatever amount of insurance money might be payable and paid under policies procured by the buyers. The agreement between the insured fixed the amount to which one of them, the seller, was to be entitled in that event. The seller having been paid its full agreed share of the insurance money, it cannot sustain a complaint against the action of the court in adjudging that the remainder of the sum collected on the policies be paid to the trustee in bankruptcy of the buyers.

The decree is affirmed.